IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **JOHN C. CULPEPPER III D/B/A** | § | |
| **STALWORTH CORPORATION,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:12-CV-01381-L** |
| | § | |
| **UNITED STATES FIRE INSURANCE** | § | |
| **COMPANY,** | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court are Plaintiffs' Motion for Partial Summary Judgment (Doc. 16), filed July

18, 2012; United States Fire Insurance Company's Motion for Summary Judgment (Doc. 19), filed

July 31, 2012; United States Fire Insurance Company's Motion for Leave to File its Second Motion

for Summary Judgment (Doc. 40), filed December 17, 2012; Plaintiffs' Motion to Exclude

Defendant's Experts (Doc. 41), filed December 17, 2012; Defendant United States Fire Insurance

Company's Motion to Strike Plaintiffs' Expert Witnesses Robert Kuhn and James Wallin (Doc. 42),

filed December 17, 2012; Plaintiffs' Motion for Leave to File Sur-Reply to Defendants' Motion to

Strike Plaintiffs' Expert Witnesses (Doc. 50), filed January 23, 2013; Defendant United States Fire

Insurance Company's Supplement to its Motion for Leave to File its Second Motion for Summary

Judgment (Doc. 54), filed February 22, 2013.  After careful consideration of the motions, responses,

replies, briefs, appendices, record, and applicable law, the court **grants** United States Fire Insurance

Company's Motion for Summary Judgment (Doc. 19); **denies** Plaintiffs' Motion for Partial

Summary Judgment (Doc. 16), and **dismisses** this action with prejudice.[1]  The court's ruling in this regard moots the parties' remaining motion, and they are therefore **denied as moot**.

## I.    Background

Plaintiffs[2] John C. CulPepper III d/b/a/ Stalworth Corporation ("Plaintiff") and C.P. Mall, L.P. filed this action on May 3, 2012, against United States Fire Insurance Company.  C.P. Mall, L.P. was dismissed from the case by agreement of the parties on March 1, 2013.  After dismissal of C.P. Mall, L.P., Plaintiff's only remaining claim is for breach of contract. This lawsuit arises from a dispute regarding an insurance claim filed by Plaintiff to recover for damages sustained to property located in Corsicana, Texas, during a hail storm on May 20, 2010.[3]  The property at issue was insured by a policy ("the Policy") issued by Defendant (Policy No. 2441315307) to Plaintiff for the period of February 7, 2010, through February 7, 2011.

---

[1] Pursuant to that agreement, Plaintiffs' claim for breach of the duty of good faith and fair dealing was dismissed with prejudice.  Because the parties also agreed that the following issues in Defendant's summary briefing were no longer at issue, the court will not consider them in ruling on the summary judgment motions or any related briefing:

- Defendant's argument on page 4 of its Brief in Support of its Motion for Summary Judgment (Docket No. 20) that C.P. Mall is not an insured under the policy at issue.

- Defendant's argument on page 10 of its Brief in Support of its Motion for Summary Judgment (Docket No. 20) that Stalworth's extra-contractual claims fail as a matter of law.

- Defendant's argument on pages 4-5 of its Motion and Brief in Support of Motion for Leave to File Second Motion for Summary Judgment (Docket No. 40) that Stalworth does not have evidence of any extra-contractual damages and that its claim that Defendant breached the duty of good faith and fair dealing fails as a matter of law.

Stipulation of Dismissal (Doc. 56).  Therefore, the only remaining claim of Plaintiff, based on Plaintiff's First Amended Complaint, is its breach of contract claim.

[2] As noted, C.P. Mall, L.P., initially a plaintiff in this action, has been dismissed with prejudice; however, at time the court uses the terms "Plaintiffs" because C.P. Mall, L.P. was a plaintiff at the time the motions for summary judgment were filed.

[3] Unless otherwise stated, the facts set forth herein are undisputed.

**Memorandum Opinion and Order - Page 2**

Plaintiff contends that the roof of the property suffered hail damage during the May 20, 2010 storm that is covered under the Policy.  Defendant investigated and adjusted the loss and issued payments on the loss to Plaintiff, but Plaintiff rejected the payment and demanded an appraisal pursuant to the Policy.  Defendant selected Tim Lozos ("Lozos") with Nelson Architectural Engineers as its appraiser, and Plaintiff selected Jim Whitten ("Whitten") with Whitten Roof Consultants, LLC as its appraiser. The parties were unable to reach agreement on the amount of the loss based on Lozos's and Whitten's appraisals.  Plaintiff therefore proposed that Brian Gardiner act as the umpire, and Defendant agreed to Plaintiff's proposal.  On October 13, 2011, Gardiner entered an appraisal award of $79,003.34, exclusive of adjustment for prior payments, deductibles or co-insurance.  Defendant paid the awarded amount, less the applicable deductibles, on October 25, 2011.

Plaintiff disagreed with the umpire's award and brought this action to overturn the umpire's decision and to recover the amount of the claimed loss under the Policy.  Plaintiff contends that "[i]n reliance on the umpire's erroneous and unauthorized decision, Defendant has refused to fully honor its Policy commitment to pay for the damage to the roof, and has breached its contract."  Am. Compl. 3. Defendant contends that although Plaintiff "initiated the appraisal process and handpicked the umpire, it is now seeking to overturn the umpire award simply because it was not as high as Mr. Whitten's exaggerated estimate." Def.'s Br. 2.  Both parties moved for summary judgment before the close of discovery.  Plaintiff contends in its summary judgment motion that the umpire's award should be overturned.  Defendant, on the other hand, contends that the umpire's award should be upheld and that it is therefore entitled to judgment as a matter of law on Plaintiff's contract claim.

## II.     Motion for Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party.  *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).  Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).  On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor."  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original).  "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"  *Id.*  (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are

insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## III.   The Parties' Summary Judgment Motions

Because the parties' summary judgment motions deal with the same issue raise as to whether the umpire's award should be upheld, the court addresses them together after summarizing each parties' arguments and Texas law applicable to review of appraisal awards.

### A.   Standard Applicable to Review of Appraisal Awards

Under Texas law, "'appraisal awards made pursuant to the provisions of an insurance contract are binding and enforceable, and every reasonable presumption will be indulged to sustain

[them].'" *JM Walker LLC v. Acadia Ins. Co.*, 356 F. App'x 744, 746 (5th Cir. 2009) (quoting

*Franco v. Slavonic Mut. Fire Ins. Ass'n*, 154 S.W.3d 777, 786 (Tex. App.   Houston 2004, no pet.)).

An appraisal award "estop[s] one party from contesting the issue of damages in a suit on the

insurance contract, leaving only the question of liability for the court." *Lundstrom v. United Servs.*

*Auto. Ass'n CIC*, 192 S.W.3d 78, 87 (Tex. App.   Houston [14th Dist.] 2006, pet. denied).

"Because a court indulges every reasonable presumption to sustain an appraisal award, the burden

of proof is on the party seeking to avoid the award." *Id.*   Texas courts recognize "three situations

in which the results of an otherwise binding appraisal may be disregarded: (1) when the award was

made without authority; (2) when the award was made as a result of fraud, accident, or mistake; or

(3) when the award was not in compliance with the requirements of the policy." *Id.*

### B.    Plaintiff's Contentions

Plaintiff seeks to overturn the appraisal award based on three grounds.   Plaintiff first

contends, based on *State Farm Lloyds v. Johnson*, 290 S.W.3d 886 (Tex. 2008), that the umpire

exceeded his authority by deciding causation (the cause of the damage to the roof) and coverage

(whether the damage is covered under the Policy).   Specifically, Plaintiff contends:

> Plaintiffs' appraiser concluded that the storm had caused widespread damage as a
> result of the storm's wind uplift and hail impacts. Defendant's appraiser did not
> dispute that the roof had extensive damage. However, he concluded that the majority
> of the observed damage was caused by deferred maintenance, general wear and tear,
> and deficient installation, and that only a negligible amount of the damage was
> caused by hail or wind. It is evident from the record that the carrier's adjuster
> expected his appraiser to make (or adopt) determinations as to coverage under the
> Policy by assessing only the covered loss.
>
> Given that the parties clearly had a dispute as to both causation and coverage,
> the narrow role of the umpire was to determine the total value of the claimed loss.
> The umpire is not an arbitrator authorized to adjudicate causation or coverage. The
> ultimate determination of liability where causation and coverage are in dispute is
> properly reserved to the courts.

**Memorandum Opinion and Order - Page 6**

Pl.'s Br. 4 (internal citations to the record omitted).  Plaintiff contends that the umpire exceeded the

scope of his authority because "he should have determined the total value of the claimed damage,

leaving to the court the resolution of [disputed] issues concerning the cause of specific losses and

whether those losses are covered by the Policy."  *Id*. 5.

Plaintiff next contends that the award should be overturned because the umpire improperly

excluded damage that Plaintiff contends is covered under the Policy.  As to this contention, Plaintiff

argues as follows:

> Even assuming the umpire could make a threshold determination of
> causation, his award incorrectly fails to assess damages that are subject to Policy
> coverage, and his determinations of causation and coverage cannot preclude trial of
> those issues in this court.  The carrier's appraiser concluded that roof damage had
> been caused by "general wear and tear," but also by inadequate maintenance and
> deficient installation. While the Policy excludes wear and tear, it clearly provides
> coverage where damage results from the effect of a covered event on a roof
> weakened by either "inadequate maintenance" or "defective installation."
>
>> 3. We will not pay for loss or damage caused by or resulting from any
>> of the following, 3.a. through 3.c. **But if an excluded cause of loss
>> that is listed in 3.a. through 3.c.** [below] **results in a Covered Cause
>> of Loss, we will pay for the loss or damage caused by that Covered
>> Cause of Loss** . . . .
>>
>> c. **Faulty, inadequate or defective**: …(2) Design, specifications,
>> *workmanship,* repair…; (3) ***Materials used in . . . construction***; (4)
>> ***Maintenance***; of part or all of any property . . . .
>
> The umpire adopted the recommendations of the carrier's appraiser   almost
> to the dollar. He therefore excluded any losses related to deficiencies in the initial
> installation, which he incorrectly assumed were not covered by the Policy: "I did
> observe loose membrane at certain membrane base flashings, but it appeared to be
> related to original installation, therefore I could not attribute this to storm-related
> wind uplift." Because the award adopts the appraiser's assessment, and thus the
> assumption that maintenance and installation problems are not subject to Policy
> coverage, enforcement of this award would improperly preempt Plaintiffs' right to
> litigate this coverage issue and to prove at trial that the wind and hail storm,
> interacting with maintenance and/or installation problems, caused the claimed
> damage.

**Memorandum Opinion and Order - Page 7**

*Id.* 5-6 (internal citations to the record omitted and emphasis added in Plaintiff's brief).

Finally, Plaintiff contends that the award should be overturned because it is incomplete. According to Plaintiff, it is incomplete because "it fails to provide a full assessment of Plaintiffs' claimed damages" in that the award fails "to assess the 'replacement cost' of any portion of the roof, *despite the fact that Plaintiffs' appraiser concluded that the storm-related damage warranted replacement of at least one section of the roof*." *Id.* 7 (emphasis added). Plaintiff also contends the award is incomplete and should be set aside because:

> [I]n issuing his award, the umpire acknowledged that he had not completed his task of assessing damages attributable to the windstorm. His analysis states that if some damage is determined to be caused by "high winds," this "wind damage would need to be added to storm-related repairs." But the analysis provides no guidance whatsoever as to what financial adjustment would be necessary in that event. And although Plaintiffs claimed hail damage to the roof HVAC units and condenser coils, the umpire stated in his report, "I, however, am not a MEP engineer, therefore I defer condenser coil damage repair recommendations to appropriate professionals." In the conclusions to his report, the umpire noted that amounts should be added (i) for the condenser coil repairs and (ii) in the event EIFS (roof) walls were displaced by the storm-related winds. On its face, this analysis was thus incomplete. It should be set aside because the umpire, by his own admission, failed to appraise the total damages necessary to facilitate the very adjustments he indicated might be warranted, and issued an award without appropriately addressing these damage issues.

*Id*. 7-8 (internal citations to the record omitted). Plaintiff, however, acknowledges, "Subsequently, the umpire was provided with a supplemental report from Defendant's appraiser that suggested only a trifling adjustment to the award was required for these items. The umpire accepted these conclusions offhand as part of his award without performing his own investigation or assessment, and despite the fact that Plaintiffs' appraiser had concluded that such damage was in fact caused by the storm." *Id.* 7 n.4.

### C.        Defendant's Contentions

In its motion and in response to Plaintiff's motion,[4] Defendant contends that it did not breach the parties' contract,[5] and the umpire did not exceed his authority.   Defendant disagrees with Plaintiff's assertion that *Johnson* precludes an umpire from considering causation.  To the extent the umpire engaged in any causation analysis, Defendant contends, based on *Johnson* and *MLCSV10 v. Stateside Enterprises, Incorporated*, 866 F. Supp. 2d 691 (S.D. Tex. 2012), that he did not exceed his authority as an appraiser. With regard to *Johnson*, Defendant asserts:

> The *Johnson* case affirms that an umpire's award will necessarily include some causation analysis. The Texas Supreme Court stated, "When different types of damage occur to different items of property, appraisers may have to decide the damage caused by each before the court can decide liability." *Id.* at 892. Thus, the Court has expressly rejected Plaintiffs' argument that the umpire award is void because causation factors into the award. *Id.* The *Johnson* Court further stated, "Courts can decide whether water or mold is covered, but if they can also decide the amount of damage caused by each, there would be no questions left for the appraisers." Under this standard, Mr. Gardiner's determination of the amount of hail damage at the Properties was proper and is binding. *Id.*

> [Plaintiff] argues that Mr. Gardiner improperly allocated between covered (hail damage) and non-covered (wear and tear) perils. However, *Johnson* specifically states that if the "causation" question involves separating loss due to a covered event from a property's pre-existing condition (a non-covered event), appraisal is still appropriate. *Id.* ("If State Farm is correct that appraisers can never allocate between covered and excluded perils, then appraisals can never assess hail damage unless a roof is brand new. That would render appraisal clauses largely inoperative, a construction we must avoid."). Accordingly, to the extent Mr. Gardiner considered the Properties' pre-existing condition or other nonhail related causes of loss, he did so within his authority as an appraiser, and the award should be upheld.

---

[4] Defendant incorporated into its responsive brief, the arguments made in support of its summary judgment motion.

[5] To establish a claim for breach of contract under Texas law, the plaintiff must establish: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Southwell v. University of Incarnate Word*, 974 S.W.2d 351, 354-55 (Tex. App.— San Antonio 1998, pet. denied) (citations omitted).

**Memorandum Opinion and Order - Page 9**

Def.'s Resp. 4-5.

In response to Plaintiff's argument that the umpire excluded from his award covered hail damage that was exacerbated by inadequate maintenance and deficient installation, Defendant contends that Plaintiff mischaracterizes the umpire's findings. Defendant asserts that in his October 5, 2011 letter, the umpire notes that "he observed loose membrane at certain membrane flashing that appeared to be related to original installation. The letter does NOT state that the loosening of the membrane resulted in additional damage that he excluded from his final damage calculation." *Id.* 5. Defendant thus contends that there is no evidence the umpire excluded any damage from his award that he believed was caused by hail, and that his award is therefore binding as to the amount of hail damage at the Property. Defendant further asserts that if Plaintiff now contends that there is roof damage that was caused by some other covered cause of loss, it has the burden to prove this by evidence. Defendant maintains that "[r]esolving the parties' disagreement on the amount of hail damage was the whole purpose of going to appraisal, and the umpire's award puts an end to that dispute."

In response to Plaintiff's contention that the award was not complete, Defendant contends that under Texas law, Plaintiff's argument in this regard is not a valid basis for attacking an appraisal award. Even assuming that it is a valid basis, Defendant contends that the umpire award was complete. According to Defendant, Plaintiff's contention that the umpire award failed to include a replacement cost damage calculation is not supported by the evidence or the award, which includes a replacement cost value.

With regard to Plaintiff's contentions that the award is incomplete because it fails to take into consideration damage to the HVAC units and the amount to repair displaced EIFS walls, Defendant

contends that Plaintiff failed to inform the court that both of the appraisers were provided an opportunity to address these issues. Defendant maintains that Plaintiff also withheld from the court Lozos's correspondence to the umpire addressing the EIFS walls and the HVAC units.  Defendant asserts that this correspondence explains that repairs for the condenser coils are included in Lozos's original estimate and in the original umpire award. According to Defendant, this correspondence also provides an estimate for additional repair costs for EIFS cladding and an additional amount of labor to replace missing fasteners on a parapet wall.  Based on this correspondence and a subsequent increase in the award from the $78,162 contemplated in this correspondence to the final award of $79,003.34 after the correspondence, Defendant therefore contends that the award includes these additional items.

Based on *KLM Resources, LLC v. Ohio Casualty Insurance Company*, No. G-10-593, 2012 WL 1911801 (S.D. Tex. May 25, 2012), Defendant contends that Plaintiff's appraiser's disagreement with the award does not establish the award was the result of a mistake  *Id.* 8 (quoting *KLM Resources* and noting that the court declined to vacate the award on the grounds that "the umpire, in the exercise of his independent judgment, awarded far less than what KLM's appraiser, or even the Court itself, deems appropriate.").  Finally, as to Robert Kuhn's ("Kuhn") expert affidavit submitted by Plaintiff, Defendant contends that "[i]If an affidavit by a hired expert contesting the umpire's findings was sufficient to overturn an umpire award, then that tactic would likely be used in every appraisal case and the appraisal clause would be meaningless." Defendant therefore objects to Kuhn's affidavit.

### D.      Parties' Contentions in Reply Briefing

In its reply brief, Plaintiff contends that Defendant's argument that the umpire has authority to decide causation when causation is disputed misinterprets *Johnson* and its progeny.  Plaintiff further contends that the award was fatally flawed because it excluded covered damages. Specifically, Plaintiff asserts that "the umpire did not merely exclude wear and tear; he also adopted the conclusions of the carrier's appraiser (almost to the dollar), thus excluding observed damage attributed to installation deficiencies. Plaintiffs are entitled to prove at trial that damage to the roof was caused by the interaction between the installation deficiencies and the storm, which the policy states is a covered loss." Pl.'s Reply 5-6.  Plaintiff asserts, based on the Kuhn's affidavit that "the roof damage occurred precisely because of the effect of the wind storm on the deficiently installed membrane." *Id.* 6.  Plaintiff therefore contends that "[b]y disregarding damage attributed to faulty construction (which the carrier's appraiser incorrectly assumed was not covered), the umpire's award improperly omitted damages that Plaintiff contends are covered under the Policy. This exceeded the umpire's authority and amounted to a mistake of fact and law." *Id.*

As previously noted, Defendant objects to Kuhn's affidavit, and by analogy, maintains that Plaintiff's reasoning is flawed, unsupported by the Policy, and misconstrues the extent of the appraisal process:

> [Plaintiff]'s position is that the appraisers have to perform a mechanical determination of "total claimed damage" regardless of the nature of the damages and their cause. *See, e.g.*, [Plaintiff]'s Response Brief at p. 3 (complaining that umpire stopped short of assessing "total claimed damage"). Under [Plaintiff]'s theory, a fender-bender claimant can require the appraisers to assess the cost for each dent in the car, no matter the cause of the damage or the age or wear and tear on the car, simply because it is part of "total claimed damage." *Johnson* forecloses that theory.

> [Plaintiff] also tries to avoid its own appraisal by claiming that because uncovered causes of loss such as "installation deficiencies" and "inadequate

maintenance" weakened the roof such that the damage from the covered cause of loss of hail was worsened, all the damages from all causes must be assessed. *See* [Plaintiff]'s Response Brief at 7 ("While the Policy excludes wear and tear, it clearly provides coverage where damage results from the effect of a covered event on a roof weakened by either inadequate maintenance or defective installation.") [Plaintiff]'s argument misreads the Policy language and the very important distinction between covered and uncovered causes of loss.

The policy provision cited by [Plaintiff] states that if an excluded cause of loss "results in a Covered Cause of Loss," then U.S. Fire will pay for the loss or damage caused by that "Covered Cause of Loss." For example, assume a gas line is improperly maintained. [Plaintiff] cannot file a valid claim to have the line repaired because the cause of the loss is not covered. But then, suppose that because the gas line is improperly maintained, it develops a leak that results in a fire (which is a covered cause of loss). Then, the damage caused by the fire itself is covered. [The original gas line repair claim, however, remains uncovered.] [Plaintiff]'s argument about the effect of inadequate maintenance is only valid if [Plaintiff] can somehow show that the "inadequate maintenance and installation deficiencies" (uncovered causes of loss) caused the hail[]storm itself. Obviously, [Plaintiff] has not and cannot do so, and its argument should be rejected.

Def.'s Reply 2-3.

### E.    Discussion

Plaintiff does not cite to any authority to show that an appraisal award that is incomplete can be disregarded. Even assuming that Plaintiff's contention regarding the award being incomplete falls within one of the three situations in which the results of an otherwise binding appraisal may be disregarded, the court concludes that Plaintiff's argument regarding the completeness of the award is not supported by the record. Regarding replacement cost, Lozos, who participated in the appraisal process, states that the final award of $79,003.34 represents the replacement cost value of the claim, and that the award was not adjusted for depreciation. Def.'s App. A1 (Doc. 24). Defendant also presented evidence that establishes that the award took into account damages to the HVAC units and the amount to repair displaced EIFS walls. Specifically, the evidence shows that in response to the letter relied on by Plaintiff, Lozos addressed the umpire's concern regarding the HVAC units and

**Memorandum Opinion and Order - Page 13**

the amount to repair displaced EIFS walls and provided a revised estimate of $79,003.34, and that this exact revised estimate provided by Lozos was subsequently incorporated into the umpire's final award of $79,003.34.   *Compare id.* A3-4 with Pl.'s App. A34. Indulging every reasonable presumption in favor of the appraisal award, the court concludes that Plaintiff has not met its burden and that its argument regarding the completeness of the award is without merit and insufficient to overturn the appraisal award.

Moreover, even assuming that Plaintiff's interpretation of *Johnson* with regard to causation is correct, the court determines that its contract claim nevertheless fails because the loss at issue is not covered under the plain language of the Policy relied on by Plaintiff, which expressly and unambiguously states: "We will not pay for loss or damage caused by or resulting from any of the following, 3.a. through 3.c. But if an excluded cause of loss listed in 3.a through 3.c results in a Covered Cause of Loss, we [Defendant] will pay for the loss or damage *caused by that Covered Cause of Loss*."[6] Pl.'s App. A8-9.  Plaintiff incorrectly assumes that "[w]hile the Policy excludes wear and tear, it clearly provides coverage where damage results from the effect of a covered event on a roof weakened by either inadequate maintenance or defective installation."  The example used by Defendant illustrates why Plaintiff's argument and interpretation and contention in this regard is based on flawed logic and is worth repeating here:

> For example, assume a gas line is improperly maintained. [Plaintiff]  cannot file a valid claim to have the line repaired because the cause of the loss is not covered. But then, suppose that because the gas line is improperly maintained, it develops a leak that results in a fire (which is a covered cause of loss). Then, the damage caused by the fire itself is covered. [The original gas line repair claim, however, remains uncovered.] [*Plaintiff] 's argument about the effect of inadequate maintenance is only*

---

[6] Although the parties disagree regarding the meaning of this language in the Policy, they do not contend that the language is ambiguous and the court concludes that it is not.

*valid if [Plaintiff] can somehow show that the "inadequate maintenance and installation deficiencies" (uncovered causes of loss) caused the hail[]storm itself.*

Def.'s Reply 2-3 (emphasis added).  Thus, even if, as Plaintiff contends, the umpire exceeded his authority as to causation by concluding that the majority of the observed damage was caused by deferred maintenance, general wear and tear, and deficient installation, Plaintiff's contract claim still fails because the damages excluded are not covered under the Policy.  Accordingly, there can be no breach by Defendant.  The court therefore concludes that there are no genuine disputes of material fact regarding Plaintiff's contract claim, and Defendant is entitled to judgment as a matter of law on Plaintiff's contract claim.

## IV.   Defendant's Objection to Affidavit of Robert Kuhn

Defendant objects to the affidavit of Kuhn, who opines that the umpire failed to assess all of the hail damage at the properties.  Defendant contends that Kuhn was not part of the appraisal process and therefore his opinion is unsubstantiated and irrelevant to the validity of the umpire award and should not be considered as part of the summary judgment record.  The court did not consider Kuhn's affidavit in ruling on the summary judgment motions.  Even if the court considered his affidavit, it would not change the result.  For these reasons and in light of the court's ruling on the motions, the objection is moot and **overruled** as such.

## V.    Conclusion

For the reasons stated herein, the court concludes that no genuine disputes of material fact exists as to Plaintiff's contract claim.  Accordingly, the court **grants** United States Fire Insurance Company's Motion for Summary Judgment (Doc. 19).  As the court has granted United States Fire Insurance Company's Motion for Summary Judgment, granting  Plaintiffs' Motion for Partial

Summary Judgment would be inconsistent with this ruling.  Accordingly, the court **denies** Plaintiffs'

Motion for Partial Summary Judgment (Doc. 16) and **dismisses** this action **with prejudice**. The

court's ruling in this regard also moots the parties' remaining motions and they are therefore **denied**

**as moot**.  The court will issue a judgment by separate document pursuant to Rule 58 of the Federal

Rules of Civil Procedure.

    **It is so ordered** this 31st day of March, 2013.


                                        _____
                                        Sam A. Lindsay
                                        United States District Judge


**Memorandum Opinion and Order - Page 16**